UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

........................................................... x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| JACKSON OVERLOOK CORP., | : | Case No. 18-12465 (JLG) |
| Debtor. | : | Judge James L. Garrity Jr. |

........................................................... x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| FORT TRYON TOWER SPE LLC, | : | Case No. 19-11505 (JLG) |
| Debtor. | : | Judge James L. Garrity Jr. |

........................................................... x

**STIPULATED AND AGREED UPON FINAL ORDER (I) AUTHORIZING
JACKSON OVERLOOK CORP. AND FORT TRYON TOWER SPE LLC
TO OBTAIN POSTPETITION SECURED FINANCING,
(II) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING USE
OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION,
(V) MODIFYING THE AUTOMATIC STAY, AND
(V) GRANTING RELATED RELIEF**

Upon this Stipulation dated March 19, 2019 (the "DIP Stipulation") entered into

by Jackson Overlook Corp. ("Jackson Overlook"), Fort Tryon Tower SPE LLC ("Fort Tryon Fee

Owner" and collectively with Jackson Overlook, the "Debtors") as debtors in the above-

captioned jointly administered chapter 11 cases (the "Chapter 11 Cases"), Fort Tryon Overlook

LLC ("FTO" or "Lender" and in some capacities, the "DIP Lender" and in some capacities the

"Prepetition Lender") and Jacqueline Thompson ("J. Thompson"), and Rutherford H.C.

Thompson ("R. Thompson" and together with Jackson Overlook, Fort Tryon Fee Owner, and J.

Thompson, the "Borrower Parties") for an order (the "DIP Order" or the "Order") under

sections 105, 361, 362, 363, 506(c), 507(b), and 552 of title 11 of the United States Code, 11

U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and

9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and

Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Southern District

of New York (the "Local Rules"), and having sought, among other things, the following relief:

(a)     Authorization for the Debtors to obtain postpetition financing in the form of a term loan facility (the "DIP Facility") by and among the Debtors and the DIP Lender up to the initial aggregate principal amount of $613,000.00 and as may be amended, under the terms of this Order, and all other agreements, documents, instruments, delivered or executed in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, including the Budget (as defined below) (collectively, the "DIP Loan Documents");

(b)     authorizing the use of any Cash Collateral (as defined below) by the Debtors;

(c)     granting to the DIP Lender on account of the DIP Facility and all obligations owing hereunder (collectively, the "DIP Obligations") allowed superpriority administrative expense claim status in the Debtors' Chapter 11 Cases;

(d)     for the benefit of the DIP Lender, automatically perfected security interests in and liens on the DIP Collateral (as defined below) to the extent set forth herein;

(e)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this DIP Stipulation and Order, in each case, to the extent set forth herein;

(f)     granting adequate protection to the Prepetition Lender; and

(g)     granting related relief.

The Court having found that the relief requested in the motion to approve the DIP Order

(the "DIP Motion") is in the best interests of the Debtors, their estates, their creditors, and other

parties in interest; and the Court having heard the statements in support of the relief requested

therein at a hearing before the Court on June 18, 2019 (the "Hearing"); and the Court having

determined that the legal and factual bases presented in the DIP Motion and at the Hearing

establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND CONCLUDED THAT:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     <u>Disposition</u>.  The DIP Stipulation is granted on a final basis in accordance with the terms of this Order.  Any objections, reservations of rights, and/or other statements with respect to the DIP Stipulation that have not been withdrawn, waived, or settled are hereby denied and overruled on the merits.

B.     <u>Petition Date</u>.  On August 14, 2018, (the "<u>Petition Date</u>"), R Thompson, purporting to act on behalf of Jackson Overlook, filed a bankruptcy petition to commence a case under chapter 11 of the Bankruptcy Code on behalf of Jackson Overlook in the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>").  On May 9, 2019, in furtherance of the Settlement Stipulation and Order (as defined below), Fort Tryon Fee Owner filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.     <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     <u>Settlement Stipulation and Order</u>.  On [ ], 2019, the Court approved the *Stipulation and Order Regarding Settlement of Disputes Between the Debtors and Related*

*Parties and Fort Tryon Overlook LLC, as Lender, Including Providing for the Sale of the Debtors' Assets and Related Matters* (the "Settlement Stipulation and Order").  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Stipulation and Order.

     E.    Debtors' Stipulations.  The Debtors admit, acknowledge, agree and stipulate to the following (collectively, the "Debtors' Stipulations"):

     i.    The Debtors are party to the Amended and Restated Senior Loan Agreement, the Amended and Restated Building Loan Agreement, and the Amended and Restated Project Loan Agreement, each dated as of September 21, 2016 (together, the "Amended Loan Agreements") with the Lender in the modified aggregate original principal amount of $32,292,060.10 (the "Amended Loans").

     ii.    On November 28, 2017, the Debtors, R. Thompson, J. Thompson and the Lender entered into a Forbearance Agreement (the "Forbearance Agreement").  Under the Forbearance Agreement, the Lender agreed to forbear from exercising remedies in respect of the Amended Loans until March 22, 2018.  The Forbearance Period was extended by letter agreement until April 23, 2018.  Except as set forth in the Settlement Stipulation and Order, the Forbearance Agreement (as supplemented) remains unmodified and in full force and effect and binding upon the Debtors.

     iii.    As of April 19, 2019, the Lender's claim (excluding unbilled and/or unpaid fees and expenses) is in an amount equal to $44,733,654.73, and such amount shall continue to increase as a result of the accrual of interest to the extent allowed under the Bankruptcy Code, the incurrence of costs and expenses by Lender and the occurrence of any other obligations of the Borrower Parties as set forth in the Forbearance Agreement, the Amended Loan Agreements and the other Loan Documents (as defined in the Forbearance Agreement) (collectively, the "Secured Obligations").

     iv.    As of the Petition Date the Debtors were, and continue to be, unconditionally indebted and liable to the Lender for the payment of the Secured Obligations, without defense, counterclaim or offset of any kind.

     v.    The Amended Loans are secured by, among other things: (i) a mortgage on and security interest in, *inter alia*, that certain vacant land intended for development, located at 33-35 Overlook Terrace (Tax Map Block 2180, Lot 62) and 730-834 West 184th Street (Tax Map Block 2180, Lot 64), together with a portion of the parcel of land located at 524 Ft. Washington Avenue (Tax Map Block 2180, Lot 63), all in New York, New York (collectively, the "Real Property") and any and all contracts, instruments, plans, specifications, drawings, permits, rights, easements, variances, licenses, approvals and other agreements relating to the Real Property (including, without limitation, any development rights, purchase agreements or any other agreements to acquire any

appurtenant real property interests) (together with the Real Property, the "Assets") and an assignment of leases and rents (collectively, such mortgages and liens the "Property Liens"), and (ii) a pledge of Jackson Overlook's Membership Interest in Fort Tryon Fee Owner (together with the Property Liens, the "Prepetition Liens"). The Debtors agree and acknowledge that the Prepetition Liens on such property and assets (the "Prepetition Collateral") were, as of the Petition Date, and remain, duly perfected.

vi.        As of the date hereof, (i) the Prepetition Liens are valid, binding, enforceable, and perfected first priority liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) (a) the Amended Loans and other obligations of the applicable Borrower Parties constitute legal, valid, and binding obligations of the respective Borrower Parties, enforceable in accordance with the terms of the Forbearance Agreement and other Loan Documents (other than in respect of the stay of enforcement against Debtors arising from section 362 of the Bankruptcy Code), (b) no offsets, defenses, or counterclaims exists with respect to any of the Secured Obligations and/or the Amended Loans and other obligations of the applicable Borrower Parties, and (c) no portion of the Amended Loans and other obligations of the applicable Borrower Parties and/or the Secured Obligations is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (iii) neither the Debtors nor the other Borrower Parties have any valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Lender, including with respect to with respect to the Amended Loans, the Real Property, the other Assets, the Forbearance Agreement, the Amended Loan Agreements or otherwise, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, disallowance, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code, and (iv) the Secured Obligations, as calculated in accordance with the Amended Loan Agreements and/or the Forbearance Agreement and/or any other Loan Documents on any given date, constitutes an allowed secured claim.

vii.        None of the Borrower Parties possess, and each of the Borrower Parties will not assert and each irrevocably waive, any claim, counterclaim, setoff, or defense of any kind, nature, or description against Lender, including anything which would in any way affect the validity, enforceability, priority, and non-avoidability of any of the Amended Loans or the Prepetition Liens, or any claim of the Lender pursuant to the Forbearance Agreement, the Amended Loan Agreements, the other Loan Documents, or otherwise.

viii.        As of the Petition Date, there were, and as of the date of this Order there are, no security interests in or liens on the Real Property and Assets other than the Prepetition Liens and the Debtors were not and are not aware of any claims, objections, challenges or causes of action against the Lender arising out of or relating to the Secured Obligations.

F.      The Debtors and their estates on its own behalf and on behalf of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns hereby to the maximum extent permitted by applicable law, unconditionally, irrevocably and forever fully release, remise, acquit, relinquish, irrevocably waive and discharge Lender and each of its respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, in each case, in their respective capacities as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, objections, challenges, defenses, counterclaims, setoff rights, rights to subordinate, recoupment, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof arising out of, relating to or in connection with the Debtors, this DIP Stipulation and Order, the Settlement Stipulation and Order, any of the Amended Loan Agreements, the Forbearance Agreement and/or the other Loan Documents, including, without limitation, (i) any so-called "lender liability", recharacterization or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, enforceability and/or avoidability of the Prepetition Liens, Secured Obligations and/or other liens and/or claims of Lender.

G.      Cash Collateral.  Any and all of the Debtors' cash including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, whether subject to control agreements or otherwise, and any amount generated by the disposition of the Prepetition Collateral, and the proceeds of any of the foregoing, whether existing on the Petition Date or thereafter, constitutes the cash collateral (within the meaning of section 363(a) of the Bankruptcy Code) of the Lender (the "Cash Collateral").

H.      Need for DIP Facility.  An immediate need exists for the Debtors to use the DIP Facility in accordance with the Budget (defined below).

I.       Adequate Protection.  The adequate protection provided to FTO, as Prepetition Lender, for the use of Prepetition Collateral under section 363 of the Bankruptcy Code is consistent with, and authorized by, the Bankruptcy Code and is offered by the Debtors to protect Prepetition Lender's interest in the Collateral (as defined below) in accordance with sections 361 and 363 of the Bankruptcy Code.  The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to obtain Prepetition Lender's consents and agreements.

J.      Best Interest.  This Court concludes that good cause has been shown and entry of this DIP Stipulation and Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, enhance the ability of the Debtors and the Lender to preserve the value of the Collateral (as hereinafter defined).

K.      Notice.  Any Hearing was held pursuant to the authorization of Bankruptcy Rule 4001 and S.D.N.Y. Local Bankruptcy Rule 4001-2.  Notice of the Hearing and the DIP Stipulation and Order have been provided to (a) counsel to the Debtors, (b) the Office of the United States Trustee for the Southern District of New York; and (c) each party that has filed a

notice of appearance and/or a request for service in the Chapter 11 Cases.    Under the
circumstances, such notice of the DIP Motion, the relief requested therein and any Hearing
complies with Bankruptcy Rules 4001(b), (c), and (d), and the Local Rules.

Based upon the foregoing, and upon the record made before this Court, including
at any Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.    <u>Approval of Stipulation and Order</u>.    The DIP Motion and the DIP
Stipulation are approved on the terms and conditions set forth in this DIP Stipulation and Order.
Any objections that have not previously been withdrawn are hereby overruled.

2.    This DIP Stipulation and Order shall be valid, binding on all parties in
interest, and fully effective immediately upon entry notwithstanding the possible application of
Bankruptcy Rules 6004(h), 7062, and/or 9014.

3.    <u>Authority to Borrow under the DIP Facility; DIP Loan Amount</u>.    The
Debtors are authorized, on a joint and several basis, to borrow up to an aggregate initial principal
amount of $613,000.00 (as may be amended, the "<u>DIP Loan Amount</u>") under a DIP Facility on
the terms set forth in this DIP Stipulation and Order, and such additional documents,
instruments, and agreements as may be reasonably required by the FTO, as DIP Lender, to
implement the terms or effectuate the purposes of and transactions contemplated by the Order
(collectively, this Order and such additional documents, instruments, and agreements,  the "<u>DIP
Loan Documents</u>"). The DIP Loan Amount will be available in multiple draws, consistent with
the Budget and with the prior written consent of the DIP Lender, in its sole discretion (each such
draw, a "<u>DIP Extension of Credit</u>", as further defined below).    The DIP Loan Amount may be
modified (and additional amounts drawn) with the prior written consent of the DIP Lender, in its

sole discretion, in a manner consistent with any amendment to the Budget. For the avoidance of doubt, the Budget may be amended and the DIP Loan Amount may be increased without further Court approval, provided that the Debtors shall provide a notice to the Court of any increase to the DIP Loan Amount within thirty days of such increase.

4.      DIP Liens.  As used herein, "DIP Collateral" shall include the Prepetition Collateral and any prepetition and postpetition assets and other property, whether now owned or hereafter acquired or existing and wherever located, of the Debtors and the Debtors' "estates" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, whether real or personal, tangible or intangible, and now existing or hereafter acquired or created, and all proceeds, rents, profits, products, and substitutions, if any, of any of the foregoing. Prepetition Collateral and DIP Collateral are collectively referred to as "Collateral"). Effective as of entry of this DIP Stipulation and Order and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or by possession or control, the following security interests and liens are granted under this Order to DIP Lender:

(a)      Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Obligations are secured by a perfected first priority priming security interest and lien on all DIP Collateral (such security interest and lien, the "Priming Lien"), to the extent that such property and assets are subject to liens that secure the obligations of such Debtor under the Amended Loan Agreements, the Forbearance Agreement and/or the other Loan Documents  (the "Primed Liens").  Subject to the allocation of sale proceeds as set forth in the Settlement

Stipulation and Order, the Priming Lien shall be senior in all respects to the interests to the liens of FTO in its capacity as Prepetition Lender.

(b)      Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Obligations are secured by a perfected first priority security interest and lien on all DIP Collateral of each Debtor (other than Avoidance Actions) to the extent such property and assets are not subject to valid, perfected, and non-avoidable liens as of the Petition Date; provided however that this Order grants for the benefit of DIP Lender a perfected security interest pursuant to this clause in proceeds of any successful claims and causes of action under Chapter 5 of the Bankruptcy Code ("Avoidance Actions"); and

(c)      Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Obligations are secured by a perfected junior-priority security interest and lien on all DIP Collateral of each Debtor to the extent that such property and assets are subject to valid, perfected, and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date, or to valid and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code (other than the existing Prepetition Liens, which existing liens will be primed by this Order), junior to the priority of such liens in favor of such third parties. For the avoidance of doubt, if there are valid, perfected, and unavoidable liens in favor of third parties at only one Debtor, the DIP Obligations will continue to have a perfected senior interest at the other Debtor.

(d)      The foregoing liens and security interests are referred to herein as "DIP Liens".

5.      DIP Superpriority Claims.  In addition to the liens and security interests granted to DIP Lender pursuant to this Order, subject and subordinate to the Carve Out (as defined below) and in accordance with sections 364(c)(1), 503, and 507 of the Bankruptcy Code, all of the DIP Obligations (including, without limitation, all DIP Extensions of Credit (as defined below)) shall constitute allowed superpriority administrative expense claims (the "DIP Superpriority Claims") with priority over any and all administrative expenses of the Debtors, whether heretofore or hereafter incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c) 507(a), 507(b), 1113, or 1114.

6.      Use of Cash Collateral and DIP Extensions of Credit.  Subject to Paragraph 22  of this Order, the Debtors are hereby authorized to use Cash Collateral and the proceeds of any borrowings under the DIP Facility in accordance with the Settlement Stipulation and Order and the other terms and conditions set forth in this Order and subject to and in accordance with the Budget (as defined below).

7.      DIP Extensions of Credit.  All loans made to or for the benefit of any of the Debtors on or after the Petition Date in accordance with the DIP Loan Documents are herein referred to as the "DIP Extensions of Credit".  The DIP Extensions of Credit:  (a) shall be evidenced by the books and records of DIP Lender, (b) shall bear interest payable and incur fees at the rates set forth in this DIP Stipulation and Order; (c) shall be secured on a  joint and several basis by each Debtor in the manner specified herein; (d) shall be payable in accordance with the DIP Loan Documents; and (e) shall otherwise be governed by the terms set forth in this DIP Stipulation and Order and the other DIP Loan Documents.  Any DIP Extension of Credit will be deemed a "protective advance" under the Amended Loan Agreements, the Forbearance Agreement and/or the other Loan Documents.  The DIP Lender shall have no obligation to make

any DIP Extension of Credit or any other financial accommodation hereunder unless all conditions precedent to making DIP Extensions of Credit have been satisfied or waived in accordance with the DIP Credit Agreement.

8.      <u>Conditions to Funding</u>.  The following are conditions precedent to the DIP Lender making any DIP Extension of Credit:

(a)      The Court has approved the DIP Stipulation and Order, and this Order is not subject to stay;

(b)      The Lender shall have approved the Budget;

(c)      The Borrower Parties shall be in full compliance with all provisions, covenants, agreements, obligations and milestones in the Settlement Stipulation and Order;

(d)      No trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code or examiner with enlarged powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code shall have been appointed in any of the Cases; and

(e)      There shall exist no Event of Default (as defined below).

9.      <u>Budget</u>.  The budget annexed hereto as **<u>Exhibit 1</u>** (as it may be updated periodically with the prior written consent of the DIP Lender and the Debtors, the "<u>Budget</u>"), hereby is approved.  Proceeds of the DIP Extensions of Credit under this Order shall be used by the Debtors in accordance with the Settlement Stipulation and Order and subject to and in accordance with the Budget.  Any request to update the Budget must be acceptable to the Lender in its sole discretion.  The DIP Lender's consent to the Budget shall not be construed as consent to the use of DIP Extensions of Credit or Cash Collateral beyond the Termination Date with respect to the DIP Extensions of Credit, regardless of whether the aggregate funds shown on the Budget have been expended.  In no way shall the Budget operate or be construed as a cap or

- 12 -

limitation on the amount of fees and/or expenses of FTO, in its capacity as DIP Lender and Prepetition Lender, and any of its professionals.

10.    <u>Reporting</u>.    The Independent Officer will deliver a monthly reporting package to the DIP Lender which such package includes a qualitative and quantitative variance analysis of: (i) forecast vs. actual for the month, by line item for the Budget and (ii) cumulative forecast vs. cumulative actual, by line item for the Budget (the items in clauses (i) and (ii), collectively, the "<u>Budget Variance Reports</u>").

11.    <u>Interest</u>.    Interest on the DIP Loan Obligations shall accrue at the Forbearance Rate as set forth in the Forbearance Agreement between the Debtors and the Prepetition Lender.

12.    <u>Repayment.</u>    The Debtors are permitted to repay the DIP Lender any outstanding amount of the DIP Facility at any time without penalty.    Nothing herein shall preclude or prejudice the (i) rights of the Debtors to seek replacement debtor-in-possession financing and, if approved by the Court, to use the proceeds from any such financing to repay the DIP Facility, provided any replacement debtor-in-possession financing is subject to the allocation provisions of the Settlement Stipulation and Order or (ii) any rights, claims, or defenses of DIP Lender to respond to, object to, oppose or otherwise challenge any such requests for debtor-in-possession financing.

13.    <u>Maturity: Termination of DIP Facility</u>.    Unless otherwise agreed to by DIP Lender, the Debtors' right to draw under the DIP Facility shall terminate upon December 31, 2019 (the "<u>Maturity Date</u>") or upon the occurrence of another Termination Event as defined and set forth in paragraph 22 of this DIP Stipulation and Order.

14.     <u>Court Pleadings</u>. Without limitation of the Lender's rights under the Settlement Stipulation and Order, the Debtors shall provide Lender and its counsel a reasonable opportunity to review all motions, pleadings, papers and documents in advance of filing or submitting such motions, pleadings, papers and documents in these proceedings with the Court or provided to any other party, all of which will be subject to the approval of the Lender before such items are filed or otherwise submitted to the Court or provided to any other party.

15.     <u>Fees and Expenses</u>.  The Debtors are authorized and directed to pay all reasonable and documented fees and expenses of DIP Lender in connection with the DIP Facility, including, without limitation, professional fees and expenses.  Such parties shall provide summary form fee statements (i.e., without any detail) which may be redacted for privileged information.  If no written objection is received on the date that is five calendar days after delivery of such fee statement to the Debtors, and the U.S. Trustee, the Debtors shall promptly pay such invoice as soon as reasonably practicable after such time (and no later than 10 calendar days after submission of such fee statement).  If an objection to a professional's invoice is timely received, the Debtors shall pay the undisputed amount of the invoice and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  DIP Lender shall not be required to comply with U.S. Trustee fee guideline or file applications or motions with, or obtain approval of, the Court for the payment of any of their out-of-pocket costs, fees, expenses, disbursements and other charges.   Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination or disgorgement.

16.     <u>Continuation of Prepetition Liens</u>.  The liens granted to FTO as Prepetition Lender shall continue in full force and effect and shall continue to secure the obligations of the

Debtors under the Amended Loan Agreements, Forbearance Agreement and other Loan Documents provided that, subject to the allocation of proceeds under the Settlement Stipulation and Order, such liens are Primed Liens and junior to the DIP Liens.

17.     Adequate Protection for the Lender.  In addition to all the existing security interests and liens previously granted to or for the benefit of FTO as Prepetition Lender, which security interests and liens shall continue in full force and effect and secure the Prepetition Obligations as adequate protection for, and to secure the payment of an amount equal to the diminution of the value of the Prepetition Collateral, due to the Debtors' sale, use, or lease of such Prepetition Collateral, and as an inducement for the Lender to permit the Debtors' use of the Collateral as provided for in this DIP Stipulation and Order, the Prepetition Lender is hereby granted, subject to the Carve Out, the following adequate protection (the "Adequate Protection Obligations"), pursuant to sections 361, 362, 363, 364(d)(1), and 507 of the Bankruptcy Code:

(a)     ***Adequate Protection Liens.***  Effective as of the entry of this DIP Stipulation and Order and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the following security interests and liens are hereby granted to Prepetition Lender: A valid, binding, continuing, enforceable, fully-perfected replacement (and if applicable, new) security interest in and lien on the DIP Collateral (the "Adequate Protection Liens").  The Adequate Protection Liens are junior to the liens securing the DIP Facility.

(b)     ***Adequate Protection Claims.***  Subject and subordinate to the Carve Out, an allowed administrative expense claim against each of the Debtors on a joint and several basis with priority over all other administrative claims in the Chapter 11 Cases including all claims of

- 15 -

the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors.  The Adequate Protection Claims are junior to the DIP Superpriority Claims.

(c)    ***Fees and Expenses.***  As additional adequate protection, the Debtors are authorized and directed to pay:  (i) the unpaid reasonable and documented professional fees, expenses, and disbursements incurred by the Prepetition Lender (including, but not limited to, the fees, expenses and disbursements of counsel and other third-party consultants) incurred by the Prepetition Lender arising prior to the Petition Date; and (ii) in regular course, all reasonable and documented out-of-pocket fees and expenses arising on or after the Petition Date of counsel and advisors to the Prepetition Lender.  Such parties shall, from time to time, provide summary form fee statements (i.e., without any detail), which may be redacted for privileged information. If no written objection is received on the date that is five calendar days after delivery of such invoice to the Debtors and the U.S. Trustee, the Debtors shall promptly pay such invoices (and no later than 10 calendar days after submission of such fee statement).  If an objection to a professional's invoice is timely received, the Debtors shall promptly pay the undisputed amount of the invoice and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  FTO as Prepetition Lender and each of its professionals shall not be required to comply with U.S. Trustee fee guideline or file applications or motions with, or obtain approval of, the Court for the payment of any of their out-of-pocket costs, fees, expenses, disbursements and other charges.   Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination or disgorgement.

- 16 -

(d)   <u>Interest</u>.   Interest on the unpaid Secured Obligations shall continue to accrue at the Default Rate as forth in the Forbearance Agreement and other Loan Documents.

18.   <u>Preservation of Liens and Rights Granted Under this Final Order</u>.

(a)   Except as otherwise expressly provided for herein or the Settlement Stipulation and Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to Lender shall be granted or allowed while any portion of the DIP Facility or the commitments thereunder or the DIP Obligations remain outstanding or until the payment in full of the Prepetition Obligations.   The DIP Liens, the Adequate Protection Liens, and the Prepetition Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors.

19.   <u>Automatic Effectiveness of Liens</u>.   The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the Debtors to grant the liens and security interests to Lender as contemplated by this DIP Stipulation and Order.

20.   <u>Automatic Perfection of Liens</u>.   The DIP Liens and Adequate Protection Liens granted pursuant to this Order shall constitute valid, enforceable, nonavoidable, and duly perfected first priority security interests and liens (subject to the priorities set forth in this Order and the Settlement Stipulation and Order).   Lender shall not be required to file or serve financing statements, notices of lien, mortgages, deeds of trust or similar instruments which otherwise may

be required under federal, state or local law in any jurisdiction, or take any action, including taking possession or control, to validate and perfect the DIP Liens or Adequate Protection Liens pursuant to this Order.  The failure by the Debtors to execute any documentation relating to the DIP Liens or Adequate Protection Liens or deliver possessory DIP Collateral shall in no way affect the validity, enforceability, perfection, or priority of such liens.   Lender is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien, or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  A certified copy of this DIP Stipulation and Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of the DIP Stipulation and Order for filing and recording.

21.   <u>Events of Default</u>.  Except as otherwise provided in this Order, or to the extent Lender may otherwise agree in writing, and subject to the Remedies Notice Period and opportunity to cure set forth in paragraph 22 of this Order, any violation of any of the terms of this Order or any occurrence of  the following shall constitute an event of default (each, an "<u>Event of Default</u>"):

(a)   The Debtors' failure to make any of the payments under the DIP Stipulation and Order to Lender when due, where such failure shall have continued unremedied for five (5) business days (the "<u>Cure Period</u>") following delivery of a default notice by FTO to the Debtors;

- 18 -

(b)      The Debtors' (and if applicable, the Borrower Parties') failure to comply with or perform any of the terms, provisions, covenants, agreements, obligations and/or milestones in this DIP Stipulation and Order and/or the Settlement Stipulation and Order, including, without limitation, the Debtors not continuing to diligently pursue the sale of their assets;

(c)      The Bidding Procedures, Purchase Agreement, and/or results of the Auction (each as defined in the Settlement Stipulation and Order) is not acceptable to the Lender;

(d)      an application, motion or other pleading shall have been filed by any Debtor seeking to reverse, amend, stay, supplement, vacate, extend, terminate or modify in any manner this DIP Stipulation and Order, or an order shall have been entered reversing, amending, supplementing, staying, extending, vacating, terminating or otherwise modifying in any manner this Order, in each case, without the prior written consent of Lender in its sole discretion;

(e)      the date any provision of this DIP Stipulation and Order shall for any reason cease to be valid and binding, or any Borrower Party shall so assert in any pleading filed in any court;

(f)      the Court shall have entered an order dismissing any of the Debtors' Chapter 11 Cases, or any Debtor shall have filed (or failed to object to) a motion or other pleading seeking such dismissal, in each case, without the prior written consent of the Lender in its sole discretion;

(g)      any Borrower Party files, proposes or otherwise supports any chapter 11 plan on behalf of a Debtor or with regard to a Debtor that does not provide for the indefeasible payment in full in cash of all amounts due and owing under the DIP Facility and/or is in not in

- 19 -

compliance with the Settlement Stipulation and Order (unless such chapter 11 plan provides for an alternative treatment that is acceptable to the Lender in is sole discretion) on the effective date of such plan;

(h)    the Court shall have entered an order confirming a chapter 11 plan of any Debtor  that does not provide for the indefeasible payment in full in cash of all amounts due and owing under the DIP Facility (unless such chapter 11 plan provides for an alternative treatment that is acceptable to the Lender in its sole discretion) on the effective date of such plan;

(i)    the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction (including the Bankruptcy Court), of any ruling or order denying any requisite approval of, delaying, impeding or enjoining the consummation of the sale(s) pursuant to the Bidding Procedures, unless such ruling or order is vacated within the Cure Period;

(j)    the Court shall have entered an order converting any of the Debtors' Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or any Borrower Party shall have filed (or failed to object to) a motion or other pleading seeking such relief, in each case, without the prior written consent of the Lender in its sole discretion;

(k)    the Court shall have entered an order terminating exclusivity under section 1121 of the Bankruptcy Code where such failure shall have continued unremedied during the Cure Period following delivery of a default notice by the Lender to the Debtors, other than on a motion or application filed at the direction of or with the consent of the Lender;

(l)    any Borrower Party commences (or supports) any action, including by filing any motion, application or other pleading, against or with respect to the Lender or the

- 20 -

Secured Obligations (including challenging the validity, enforceability, perfection or priority of any lien securing any such obligation);

(m)    the Debtors shall use the Collateral in any manner inconsistent with this DIP Stipulation and Order and/or the Budget, unless such inconsistency is remedied within the Cure Period;

(n)    the Court shall have entered an order invalidating, avoiding, disallowing, subordinating, limiting or recharacterizing, in any respect, any claim, lien, or interest of the Lender;

(o)    the Court shall have entered an order authorizing the appointment or election of a trustee (including a chapter 11 trustee), responsible officer, examiner or any other representative with expanded powers relating to the operation of the Debtors' assets and/or businesses in any of the Debtors' Chapter 11 Cases, or any Borrower Party applies for, consents to, or acquiesces in (or fails to object to) any such appointment or election (as applicable), in each case, without the prior written consent of the Lender in its sole discretion;

(p)    any Borrower Party shall have filed a motion or application for the approval of any superpriority claim or any lien in any of the Debtors' Chapter 11 Cases (other than such claim or lien granted or permitted pursuant to this Order), which is pari passu with or senior to any of the DIP Superpriority Claims or Adequate Protection Superpriority Claim, DIP Liens or Prepetition Liens, without the prior written consent of the Lender in its sole discretion;

(q)    other than with respect to the Carve Out, any Debtor shall create or incur, or the Court enters an order granting, any claim or lien that is pari passu with or senior to any of the DIP Liens, the Prepetition Liens, the Secured Obligations, the Adequate Protection Liens or

Adequate Protection Obligations (other than any such claim or lien granted or permitted pursuant to this Order), without the prior written consent of the Lender in its sole discretion; and

(r)    any Borrower Party files, proposes or otherwise supports any  chapter 11 plan on behalf of a Debtor or with regard to a Debtor that is not in form and substance acceptable to the Lender.

22.    <u>Protection of Lender's Rights</u>.

(a)    So long as no Termination Event shall have occurred and be continuing after the conclusion of the Remedies Notice Period (and subject to delivery of the Remedies Notice) (in each case as defined below), Lender agrees not to take any action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Amended Loan Agreements, the Forbearance Agreement, the other Loan Documents or this DIP Stipulation and Order or otherwise seek to exercise or exercise any enforcement rights or remedies against any DIP Collateral or in connection with any Adequate Protection Liens or on account of any claims, other than as set forth herein, including, without limitation, the right to credit bid at a sale pursuant to the Bidding Procedures.

(b)    A "Termination Event" means:  (i) the occurrence of an Event of Default (ii) the Maturity Date  of the DIP Facility, or (iii) this DIP Stipulation and Order ceasing to be in full force and effect for any reason (each a "<u>Termination Event</u>").  Upon the occurrence and during the continuance of a Termination Event, and following five (5) business days' (the "<u>Remedies Notice Period</u>") after the delivery, by the Lender to the Debtors' restructuring counsel (via email), of a written notice (the "<u>Remedies Notice</u>") of the occurrence of a Termination Event (with a copy to counsel for the U.S. Trustee,), unless such Termination Event is cured by the Debtors or waived by the Lender by the end of such Remedies Notice Period, Lender may (1)

- 22 -

declare (a) the commitment of the DIP Lender as to the DIP Facility to be terminated, whereupon such commitments and obligation shall be terminated; (b) all DIP Obligations immediately due and owing, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Debtors, whereupon all DIP Obligations shall be immediately due and payable; and (c) subject to the Carve Out, that the Debtors shall have no right to request or use any proceeds of any DIP Extensions of Credit, other than towards the satisfaction of the DIP Obligations; and (2) exercise all rights and remedies provided in this DIP Stipulation and Order and the DIP Loan Documents, as applicable.   Immediately upon the delivery of the Remedies Notice, to the extent not previously provided, the Debtors shall provide a line-by-line itemization of the Budget to the DIP Lenders.   During the Remedies Notice Period, (i) the Debtors shall not have access to and are not permitted to use DIP Collateral, including Cash Collateral except as otherwise agreed to by the Lender in its sole discretion and (ii) the Debtors and the Lender consent to a hearing on an expedited basis to consider whether a Termination Event has occurred and whether the automatic stay may be lifted so that the Lender may exercise any and all of their respective rights and remedies in accordance with this Order; provided that if a hearing to consider exercise of the forgoing remedies is requested to be heard before the end of the Remedies Notice Period but is scheduled for a later date by the Court, the Remedies Notice Period shall automatically be extended to the date of such hearing, but no later than seven  (7) business days after the delivery of the Remedies Notice.   In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and no party shall be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code,

to the extent that such relief would in any way impair or restrict the rights and remedies of the Lender set forth in this DIP Stipulation and Order.

(c)      No rights, protections, or remedies of the Lender granted by the provisions of this DIP Stipulation and Order or the DIP Loan Documents shall be limited, modified, or impaired in any way by (i) any actual or purported withdrawal of the consent of any party to the Debtors' authority to use Cash Collateral, (ii) any actual or purported termination of the Debtors' authority to use Cash Collateral, or (iii) the terms of the DIP Stipulation and Order or any other order or stipulation related to the Debtors' use of Cash Collateral or the provision of adequate protection to any party.

23.      <u>Waiver of Requirement to File Proofs of Claim</u>.

(a)      Lender shall not be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to maintain its respective claims for payment of the DIP Obligations, Prepetition Obligations and Adequate Protection Obligations.  The statements of claim in respect of the DIP Obligations,  Prepetition Obligations and Adequate Protection Obligation set forth in this DIP Stipulation and Order are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

24.      <u>Carve Out</u>.  Carve Out means the sum of all fees required to be paid to the clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, and, in the event the above-captioned case is converted to a case under chapter 7 of the Bankruptcy Code, up to $15,000 in fees incurred by a chapter 7 trustee (the "<u>Carve Out</u>").

25.      <u>Prohibition on Use of Collateral</u>.  The Debtors shall not (directly or indirectly) investigate, assert, or prosecute (a) any claims or causes of action arising under or

related to the Amended Loan Agreements, the Forbearance Agreement, the other Loan Documents, or the liens or security interests securing the obligations under any of the foregoing or pursue a challenge against the Lender or (b) raise any defenses to the Prepetition Obligations, the DIP Obligations, or the Prepetition Liens. A Termination Event will occur if the Debtors engage in the forgoing (a) or (b) of this paragraph. No portion of the DIP Facility, the DIP Collateral (including the Prepetition Collateral and the Cash Collateral), or any disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs, or expenses incurred by any party in interest in connection with the foregoing (a) or (b) of this paragraph.

26.     <u>Stipulations Regarding Prepetition Obligations and the Prepetition Liens Binding on Parties in Interest</u>. The stipulations and admissions contained in this Order including, without limitation, in recital Paragraphs E and F of this Order shall be binding on the Debtors' estates and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) and all parties in interest, including any person or entity acting (or purporting to act) on behalf of the Debtors' estates.

27.     <u>Limitation on Charging Expenses Against Collateral</u>. Notwithstanding anything in this DIP Stipulation and Order (i) no costs or expenses of administration of the chapter 11 cases, successor cases or any other future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral, including Cash Collateral, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity and (ii) the Debtors (and any successor thereto, including any representatives thereof, including any trustees appointed in the chapter 11 cases or any successor cases) shall be

deemed to have waived any rights, benefits or causes of action under section 506(c) of the Bankruptcy Code as they may related to or be asserted against the Lender or the DIP Collateral or Prepetition Collateral, and such waiver shall be binding upon all parties in interest in the Chapter 11 Cases. Nothing contained in this Order hall be deemed a consent by the Lender to any charge, lien, assessment or claim against, or in respect of, the DIP Collateral or the Prepetition Collateral under 506(c) of the Bankruptcy Code or otherwise.

28.     <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the Lender pursuant to the provisions of this DIP Stipulation and Order or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

29.     <u>No Marshaling/Applications of Proceeds</u>.   Subject to the allocation of proceeds of a sale set forth in the Settlement Stipulation and Order, the Lender shall not be subject to the equitable doctrine of 'marshaling' or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this DIP Stipulation and Order and the Settlement Stipulation and Order.

30.     <u>Section 552(b)</u>.  The Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Lender in any respect.

31.     <u>Exculpation</u>.  Nothing in this DIP Stipulation and Order, the Amended Loan Agreements, the Forbearance Agreement, the other Loan Documents the Settlement Stipulation

and Order or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  In addition, (a) the Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne by the Debtors.

32.    <u>Indemnification</u>.  The Debtors shall jointly and severally indemnify and hold harmless the Lender and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns in respect of any and all claims, causes of action, liabilities, obligations, judgments, damages or expenses of any kind for actions (or inactions) taken in connection with or related in any way to negotiating, implementing, documenting or obtaining requisite approvals of the Settlement Stipulation and Order and this DIP Stipulation and all documents related to and all transactions contemplated by the foregoing <u>provided, however,</u> that no such person will be indemnified for costs, expenses or liabilities to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the  gross negligence, bad faith or willful misconduct of such person (or their related persons).

33.     <u>Credit Bidding</u>.  FTO, both in its capacity as Prepetition Lender and DIP Lender, shall have the unqualified right to credit bid,  subject to the terms of the Settlement Stipulation and Order, (i) up to the full amount of its DIP Obligations and Prepetition Obligations in any sale of the DIP Collateral (or any part thereof), (ii) the Adequate Protection Obligations, including the Adequate Protection Claim, and (iii) any unpaid amounts due and owing to FTO under this DIP Stipulation and Order without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

34.     <u>Monitoring of Collateral</u>.   During normal business hours and after advanced written notice to the Debtors' counsel (email shall suffice), Lender and its representatives, consultants and advisors, shall be given reasonable access to the Debtors' books, records, assets and properties for purposes of monitoring the Debtors' business and the value of the DIP Collateral, and shall be permitted to conduct, at its discretion and at the Debtors' cost and expense, collateral examinations and appraisals in respect of the DIP Collateral.

35.     <u>No Third Party Rights</u>.  Except as otherwise expressly set forth herein, this DIP Stipulation and Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than the Lender and the Debtors, and their respective successors and assigns.

36.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Dip Stipulation and Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly the Lender's right to seek any other or supplemental relief in respect of the Debtors, including the right to seek new, different or additional adequate protection, or the Debtors' rights to oppose such relief.  Nothing contained in this DIP Stipulation and Order shall

be deemed a finding by the Court or an acknowledgement by the Lender that the adequate protection granted in this Order does in fact adequately protect the Lender against any diminution in value of the Prepetition Collateral.

37.    Protection under Section 364(e) of the Bankruptcy Code.    If any or all of the provisions of this DIP Stipulation and Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations owing to the Lender incurred prior to the actual receipt by Lender of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to this DIP Stipulation and Order.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations or Adequate Protection Obligations owing to  the Lender by the Debtors prior to the actual receipt by the Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this DIP Stipulation and Order, and the Lender shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code and this Order.

38.    Binding Nature of Order.    The provisions of this DIP Stipulation and Order shall be binding upon and inure to the benefit of the Lender, to the extent and as set forth herein, the Borrower Parties and their respective successors and assigns (including, without limitation, any chapter 7 or chapter 11 trustee, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary hereafter elected or appointed for or on behalf of any Debtors' estate or with respect to its property).  Such binding effect is an integral part of this DIP Stipulation and Order.

- 29 -

39.    <u>Survival of Order</u>.  The provisions of this DIP Stipulation and Order and any actions taken pursuant thereto (a) shall survive the entry of any order:  (i) confirming any plan in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; or (iii) dismissing any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Order shall maintain their priority as provided by this Order until (x) all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with Settlement Stipulation and Order and (y) the Prepetition Obligations are paid in full or receive such other treatment as set forth in the Settlement Stipulation and Order.  The DIP Obligations shall not be discharged by the entry of any order confirming any plan in any of the Chapter 11 Cases that does not provide for payment in full of the DIP Obligations or such other treatment of the DIP Obligations as may be agreed to by the DIP Lender.

40.    <u>Priority of Terms</u>.  To the extent of any conflict between or among the DIP Motion, the Amended Loan Agreements, the Forbearance Agreement, the other Loan Documents and this DIP Stipulation and Order, the terms and provisions of this DIP Stipulation and Order shall govern.

41.    <u>Email Writing</u>. Where a written consent, acceptance, approval or waiver is required pursuant to this DIP Stipulation and Order, such written consent, acceptance, approval or waiver shall be deemed to have occurred if, by agreement between counsel to the Parties submitting and receiving such consent, acceptance, approval, or waiver, it is conveyed in writing (including electronic mail) between each such counsel without representations or warranties of any kind on behalf of such counsel.

- 30 -

42.  <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Order and the DIP Facility.


*[Remainder of Page Intentionally Left Blank; Signature Pages Follow]*

**IN WITNESS WHEREOF,** the parties hereto have duly executed this DIP Stipulation as of the date and year first above written.

**LENDER**:                                    **Jackson Overlook**:

Fort Tryon Overlook LLC,                      Jackson Overlook Corp.,
a New York limited liability company          a New York corporation

By: /s/ Edward J. Welch                        By: /s/ Jacqueline Thompson
Name:  Edward J. Welch                         Name: Jacqueline Thompson
Title:   President                             Title: Sole Shareholder


**Fort Tryon Fee Owner**:
Fort Tryon Tower SPE LLC,
a Delaware limited liability company

By:      Jackson Overlook Corp.,
         a New York corporation

By: /s/ Jacqueline Thompson
Name: Jacqueline Thompson
Title: Sole Shareholder


**Jacqueline Thompson:**                       **Rutherford H.C. Thompson:**


By: /s/ Jacqueline Thompson                    By: /s/ Rutherford H.C. Thompson


SO ORDERED this 20th day of June, 2019

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity Jr.
United States Bankruptcy Judge